## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

**ANGELA DIANA LOMAN,**

      **Plaintiff,**

**v.**

                                              **Case No. 13-CV-1205-DDC**

**CAROLYN W. COLVIN,**
**Acting Commissioner of Social Security,**

      **Defendant.**

## MEMORANDUM AND ORDER

Pursuant to 42 U.S.C. § 405(g), plaintiff seeks judicial review of the final decision of the Commissioner of Social Security Administration denying her application for disability insurance benefits and supplemental security income under Title II and Title XVI of the Social Security Act, as amended.  Plaintiff has filed a brief (Doc. 17) seeking judicial review of the Commissioner's decision.  The Commissioner has filed a brief in opposition (Doc. 22) and submitted the administrative record (Doc. 10) contemporaneously with her Answer (Doc. 9).  When plaintiff filed her Reply (Doc. 26), this matter became ripe for determination.  Having reviewed the administrative record and the briefs of the parties, the Court affirms the decision of the Commissioner.

### I.   Factual Background and Procedural History

Plaintiff applied for Social Security Disability ("SSD") benefits and Supplemental Security Income ("SSI") alleging disability beginning January 18, 2009.  (R. 9)  The Social Security Administration denied plaintiff's applications on March 17, 2010 (R. 9) and again denied them on September 13, 2010.  (R. 9)  Plaintiff requested a hearing by an Administrative

Law Judge ("ALJ") (R. 9), who held a hearing on August 3, 2011.  (R. 9)  During that hearing, plaintiff amended the date of her disability onset to October 15, 2009.  (R. 9)  On September 11, 2011, the ALJ issued a decision denying plaintiff's application for SSD benefits because the ALJ determined that plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act (R. 22).  42 U.S.C. §§ 416(i), 423(d).  The ALJ also denied plaintiff's application for SSI benefits for the same reason under section 1614(a)(3)(A) of the Social Security Act (R. 23).  42 U.S.C. § 1382(c).

Plaintiff filed an appeal with the Appeals Council on September 21, 2011.  (R. 5)  The Appeals Council denied plaintiff's appeal on March 27, 2013.  (R. 1-3)  Plaintiff has exhausted the proceedings before the Commissioner and now seeks judicial review of the final decision denying her SSD and SSI benefits.

## II.  Legal Standard

### A.  Standard of Review

42 U.S.C. § 405(g) grants federal courts authority to conduct judicial review of final decisions of the Commissioner and "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision . . . with or without remanding the cause for a rehearing."  Judicial review of the Commissioner's denial of benefits is limited to whether substantial evidence in the record supports the factual findings and whether the Commissioner applied the correct legal standards.  *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014); *Lax v. Astrue,* 489 F.3d 1080, 1084 (10th Cir. 2007); 42 U.S.C. § 405(g).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" but it must be "more than a scintilla," although it need not be a preponderance.  *Lax*, 489 F.3d at 1084 (citations and internal quotation marks omitted).  While

the courts "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases," they neither reweigh the evidence nor substitute their judgment for the Commissioner's. *Id.* (citation and internal quotation marks omitted). But they also do not accept "the findings of the Commissioner" mechanically or affirm those findings "by isolating facts and labeling them substantial evidence, as the court[s] must scrutinize the entire record in determining whether the Commissioner's conclusions are rational." *Alfrey v. Astrue*, 904 F. Supp. 2d 1165, 1167 (D. Kan. 2012) (citation omitted). When determining whether substantial evidence supports the Commissioner's decision, the courts "examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision." *Id.* (citation omitted). "Evidence is not substantial if it is overwhelmed by other evidence, particularly certain types of evidence (e.g., that offered by treating physicians) or if it really constitutes not evidence but mere conclusion." *Lawton v. Barnhart*, 121 F. App'x 364, 366 (10th Cir. 2005) (quoting *Frey v. Bowen,* 816 F.2d 508, 512 (10th Cir. 1987)).

A "failure to apply the proper legal standard may be sufficient grounds for reversal independent of the substantial evidence analysis." *Brown ex rel. Brown v. Comm'r of Soc. Sec.*, 311 F. Supp. 2d 1151, 1155 (D. Kan. 2004) (citing *Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir. 1994)). But such a failure justifies reversal only in "appropriate circumstances"—applying an improper legal standard does not require reversal in all cases. *Glass*, 43 F.3d at 1395; *accord Lee v. Colvin*, No. 12-2259-SAC, 2013 WL 4549211, at *5 (D. Kan. Aug. 28, 2013) (discussing the general rule set out in *Glass*). Some errors are harmless and require no remand or further consideration. *See*, *e.g.*, *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161-63 (10th Cir. 2012);

*Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004); *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

### B.  Disability Determination

Claimants seeking SSD and SSI benefits carry the burden to show that they are disabled. *Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009) (citation omitted).  In general, the Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

The Commissioner follows "a five-step sequential evaluation process to determine disability."  *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (discussing 20 C.F.R. § 404.1520 (governing claims for disability insurance benefits) and § 416.920 (governing claims for supplemental security income)).  As summarized by the Tenth Circuit, this familiar five-step process is as follows:

> Step one requires the agency to determine whether a claimant is presently engaged in substantial gainful activity.  If not, the agency proceeds to consider, at step two, whether a claimant has a medically severe impairment or impairments . . . . At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition listed in the appendix of the relevant disability regulation.  If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent [him or] her from performing [his or] her past relevant work.  Even if a claimant is so impaired, the agency considers, at step five, whether [he or] she possesses the sufficient residual functional capability ["RFC"] to perform other work in the national economy.

*Wall*, 561 F.3d at 1052 (citations and internal quotation marks omitted); *accord* 20 C.F.R. § 404.1520(b)-(g).  The claimant has the "burden of proof on the first four steps," but the burden shifts to the Commissioner "at step five to show that claimant retained the RFC to 'perform an

alternative work activity and that this specific type of job exists in the national economy.'"
*Smith v. Barnhart*, 61 F. App'x 647, 648 (10th Cir. 2003) (quoting *Williams v. Bowen*, 844 F.2d
748, 751 (10th Cir. 1988)).  This analysis terminates if the Commissioner determines at any point
that the claimant is or is not disabled.  *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799,
801 (10th Cir. 1991).

### III. Discussion

The ALJ found that plaintiff has the following "severe impairments":  mild degenerative
disc disease, fibromyalgia, gout, arthritis, and a depressive disorder.  (R. 12)  However, the ALJ
concluded that plaintiff does not have an impairment or combination of impairments that meets
the severity of one of the listed impairments in 20 CFR Part 404.  (R. 12)  Instead, the ALJ found
that plaintiff has the RFC

> to perform somewhat less than a full range of "light work" as that term is
> otherwise defined in 20 CFR 404.1567(b) and 416.967(b).  Specifically, [plaintiff]
> can lift and carry up to 20 pounds occasionally and 10 pounds frequently.  She
> can stand or walk for a total of 6 hours and can sit for at least 6 hours out of an 8-
> hour workday.  She can occasionally stoop, kneel, crouch, crawl, and climb—but
> not ladders, ropes, or scaffolding.  She can perform work not involving exposure
> to temperature extremes or workplace hazards such as unprotected heights and
> dangerous moving machinery.  She can perform simple, unskilled work involving
> routine, repetitive tasks.  She can perform occasional, simple, work-related
> decision-making, but no complex planning or negotiation.  She can tolerate minor,
> infrequent changes within the workplace.  She can perform work not requiring
> more than an 8th grade mathematics or literacy level.  The claimant could perform
> work without need for redirection to job tasks on more than a weekly basis.

(R. 13-14)  Based on that RFC, the ALJ determined that plaintiff was unable to perform any past
relevant work.  (R. 21)  Still, based on plaintiff's age, education, work experience, and RFC, the
ALJ found that "there are jobs that exist in significant numbers in the national economy that the
claimant can perform."  (R. 21)

Plaintiff argues (1) that the ALJ's determination of plaintiff's RFC is not supported by substantial evidence and is based on incorrect rules of law; and (2) that the ALJ erred by finding that plaintiff could perform "other work" existing in significant numbers in the national economy. The Court addresses each argument in turn.

**A. Plaintiff's RFC**

Upon review of the evidence, the ALJ concluded that plaintiff has the following "severe impairments": mild degenerative disc disease, fibromyalgia, gout, arthritis, and depressive disorder. Thus, the issue presented is not whether plaintiff suffers from serious and debilitating ailments, but rather whether plaintiff's ailments preclude her from performing work in the national economy.

"The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Hendron v. Colvin*, No. 13-3243, 2014 WL 4377700, at *3 (10th Cir. Sept. 5, 2014). The ALJ's determination is supported by a proper narrative statement, much of which plaintiff does not dispute.

The ALJ found that "[a] review of all of the evidence does not indicate significant limitations in daily activities." (R. 19) The ALJ noted that:

> [Plaintiff] has reported the ability to care for herself and her home. She is able to drive, shop and handle finances. Despite reports of problems concentrating, she has reported hobbies including puzzles, television and reading without difficulty. On the daily activity statement completed by [plaintiff] on June 10, 2010, she reported an inability to do yard work due to the pain . . . . However, she told Comcare on April 1, 2010 that her interests included outside activities including yard work and going to the zoo . . . . A review of the Comcare records notes that she reported being a caregiver for her mother for years prior to her death in February 2010.

(R. 19)  Plaintiff disputes none of this.  Furthermore, the ALJ noted that plaintiff had worked between 20 and 40 hours per week as a home health care worker for several months before her August 3, 2011 hearing.  (R. 18)  Thus, the evidence shows that plaintiff could work up to a full time schedule and care for herself and others well after the alleged onset of disability in October 2009.

Nevertheless, plaintiff argues that the ALJ erred in considering the available medical evidence, which she claims supports a finding of disability.  Specifically, plaintiff asserts that the ALJ erroneously gave "little weight" to two medical opinions concluding she was disabled:  an April 6, 2009 statement from Dr. Joe Davison and an August 10, 2011 statement from Dr. Kirk Bliss.  In addition, plaintiff argues that the ALJ improperly gave "substantial weight" to the opinions of two nontreating state agency physicians.

### 1.  Standard for Evaluating Medical Opinions

An ALJ must consider all medical opinions.  *See* 20 C.F.R. § 404.1527(c).  The ALJ must also discuss the weight he or she assigns to such opinions.  *See id.*; § 404.1527(e)(2)(ii) ("[T]he administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.").

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions."  20 C.F.R. § 404.1527(a)(2).  The regulations identify three types of "acceptable medical sources":

(1) treating sources, i.e., medical sources who have treated or evaluated the claimant or have had "an ongoing treatment relationship" with the claimant; (2) nontreating sources, i.e., medical sources who have examined the claimant but lack an ongoing treatment relationship; and (3) nonexamining sources, i.e., medical sources who render an opinion without examining the claimant. *See id.* § 404.1502; *Pratt v. Astrue*, 803 F. Supp. 2d 1277, 1282 n.2 (D. Kan. 2011). In general, the Commissioner gives more weight to opinions from examining sources than to opinions from nonexamining sources. 20 C.F.R. § 404.1527(c)(1). And the Commissioner generally gives more weight to treating sources because

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Id.* § 404.1527(c)(2).

## 2. Treating Sources

Dr. Joe Davison and Dr. Kirk Bliss are "treating sources" because they had an ongoing treatment relationship with plaintiff. Dr. Davison and Dr. Bliss worked at West Wichita Family Clinic. Treatment records for plaintiff's time as a West Wichita patient start in February 2009 and end in November 2010 when plaintiff became a patient of a different healthcare provider, Hunter Health Care.

### a. Standard for Evaluating Opinions of Treating Sources

The Commissioner will give medical opinions of treating sources controlling weight when they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record." *Id.* § 404.1527(c)(2). The ALJ must consider these two factors when determining whether a

8

treating physician's medical opinion "is conclusive, i.e., is to be accorded 'controlling weight,' on the matter to which it relates." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011) (citation omitted).  First, the ALJ must consider whether such an opinion is well-supported. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).  If it has adequate support, then the ALJ must "confirm that the opinion is consistent with other substantial evidence in the record." *Id.*  An ALJ "may decline to give controlling weight to the opinion of a treating physician where he articulate[s] specific, legitimate reasons for his decision."  *Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009) (citation and internal quotation marks omitted).

The ALJ's inquiry does not end with determining that a medical opinion does not deserve controlling weight.  *See Krauser*, 638 F.3d at 1330; *Watkins*, 350 F.3d at 1300.

> Even if a treating opinion is not given controlling weight, it is still entitled to deference; at the second step in the analysis, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned.

*Krauser*, 638 F.3d at 1330; *accord Watkins*, 350 F.3d at 1300-01.  Unless the ALJ gives the treating source opinion controlling weight, it must evaluate the medical opinion in accordance with factors contained in the regulations.  20 C.F.R. § 404.1527(c); Policy Interpretation Ruling Titles II & XVI:  Medical Source Opinions on Issues Reserved to the Commissioner, SSR 96–5p, 1996 WL 374183, at *1, 3 (S.S.A. July 2, 1996).  Those factors are:

> (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (citation omitted); 20 C.F.R.

§ 404.152(c)(2-6).  After considering these factors, the ALJ must give reasons in the decision for

"the weight he ultimately assigns the [medical] opinion."  *Watkins*, 350 F.3d at 1301 (citation

and internal quotation marks omitted).  However, the ALJ need not apply a factor-by-factor

analysis so long as the decision is "'sufficiently specific to make clear to any subsequent

reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for

that weight.'"  *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting *Watkins*, 350

F.3d at 1300).  When an ALJ completely rejects an opinion of a treating source, the ALJ must

state specific and legitimate reasons for the decision.  *Watkins*, 350 F.3d at 1301.

An ALJ must give a treating physician's opinion substantial weight "unless good cause is

shown to disregard it."  *Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 289–90

(10th Cir. 1995).  "When a treating physician's opinion is inconsistent with other medical

evidence, the ALJ's task is to examine the other physicians' reports to see if they outweigh the

treating physician's report, not the other way around."  *Id.* at 290 (citation and internal quotation

marks and alterations omitted).  A reviewing court may reverse and remand a Social Security

case when the ALJ has failed to apply the correct legal standards when weighing the opinion of a

treating physician.  *Id.* at 289.

### b.  Dr. Joe Davison

The administrative record contains a medical opinion from Dr. Joe Davison, completed

on April 6, 2009 and based on several office visits by plaintiff.  (R. 438)  From the record, it

appears that Dr. Davison treated plaintiff from some time in 2008 to June 25, 2009, but treatment

records begin in April 2009 (R. 256-57, 260).  On April 6, 2009, plaintiff told Dr. Davison that

she intended to seek FMLA leave and Dr. Davison completed a form to help with this request.

(R. 439)  Dr. Davison diagnosed plaintiff with fibromyalgia, neuropathy, and gout.  (R. 439)  He indicated that plaintiff's condition was probably "lifelong" and concluded that plaintiff's condition would force her to miss three days of work per month.  (R. 440)  At the administrative hearing for Social Security benefits before the ALJ, a vocational expert testified that three absences from work per month essentially precludes plaintiff from sustaining long-term employment.  (R. 63, 65)  Thus, the ALJ concluded that Dr. Davison's opinion "could be taken as preclusive of competitive employment."  (R. 15)

The ALJ gave Dr. Davison's opinion "little weight" for three reasons.  First, the ALJ argued that Dr. Davison's opinion was "in conflict with reality" because plaintiff had been working in competitive employment when Dr. Davison issued his opinion and had since returned to competitive employment.  (*Id.*)  Second, the opinion was given before the alleged onset date of plaintiff's disability on October 15, 2009.  (*Id.*)  Third, the ALJ claimed that Dr. Davison's assessment was based on the claimant's own reports of limitations rather than objective testing.  (*Id.*)

Starting with the first reason, plaintiff argues that the ALJ improperly evaluated plaintiff's ability to work.  Plaintiff argues that she sought the medical opinion from Dr. Davison because she needed more time off from work and that her job at Wal-Mart ended because she "couldn't handle the pain."  (R. 39-40)  However, Dr. Davison issued his medical opinion on April 6, 2009, and plaintiff continued working at Wal-Mart until a couple of weeks after October 10, 2009.  Though plaintiff testified that she quit because of pain, the fact that she was able to continue working for more than six months after Dr. Davison's diagnosis of disability cuts against the credibility of his opinion.

The ALJ also noted that plaintiff has since returned to work.  (R. 15)  Starting in April 2011, plaintiff began working between 20 and 40 hours per week as a home healthcare companion.  (R. 36-37)  She was working in this capacity at the time of the August 3, 2011 ALJ hearing.  (*Id.*)  Plaintiff argues that the ALJ erred because he did not mention that plaintiff returned to work more than two years later, in April 2011.  Contrary to her claims, plaintiff's return to work, even two years later, is inconsistent with Dr. Davison's disability diagnosis.  As a result, when assigning little value to Dr. Davison's opinion, the ALJ properly considered plaintiff's work history.

Plaintiff next faults the ALJ for considering that Dr. Davison's opinion was provided well before the alleged disability onset date.  It is true, as plaintiff states, that "medical evidence is not irrelevant because it is prior to the alleged period of disability" (Doc. 17 at 5).  *Lackey v. Barnhart*, 127 F. App'x 455, 458 (10th Cir. 2005).  However, the ALJ did not reject Dr. Davison's opinion out of hand simply because he provided it well before plaintiff claims she became disabled.  Rather, it was but one factor, along with plaintiff's work history and the treatment records, that led the ALJ to give little value to Dr. Davison's opinion.  The ALJ did not err by viewing the timing of Dr. Davison's opinion as one factor cutting against his credibility.

Finally, the ALJ found that Dr. Davison based his report on plaintiff's complaints, without support from objective testing.  Admittedly, the treatment notes from West Wichita Family Clinic reveal the plaintiff consistently complained of back pain and radiculitis.  But plaintiff must show more than the mere presence of a condition or ailment.  *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997).  Rather, she must show the she has impairments so limiting that they preclude the performance of all substantial work activity.  *Parker v. Astrue*, No. 11-

2541, 2012 WL 1154493, at *6 (D. Kan. Apr. 5, 2012).  After a detailed review of the treatment records, the ALJ concluded that they "[do] not indicate significant concerns."  (R. 15)

Treatment records from the West Wichita clinic begin in February 2009.  On the first visit, Dr. Davison noted that "[t]here does appear to be diskogenic back pain and left sided neuropathy more in a dermatome pattern.  I think she may actually have diskogenic disease, probably at L4-5."  (R. 257)  The records note plaintiff was involved in a car accident on March 24, 2009 but she reported no change in her existing symptoms in a visit soon after the accident. (R. 258)  The key evidence comes from the treatment notes Dr. Davison made about plaintiff's April 6, 2009 visit to West Wichita—the date when Dr. Davison provided his medical opinion that plaintiff was disabled.  After plaintiff's visit, Dr. Davison reported that plaintiff "*is in relatively good health except for the fibromyalgia . . .*" (emphasis added).  (R. 258)  He noted that plaintiff's fibromyalgia can flare up in cold weather which caused her to miss up to three days of work per month, depending on temperature. (*Id.*)  Dr. Davison concluded by writing:  "I think in general she is in pretty good shape.  She does need FMLA papers filled out and with her assistance I was able to do that."  (*Id.*)  Thus, Dr. Davison's treatment notes on April 6, 2009— that plaintiff "is in pretty good shape" and "is in relatively good health except for fibromyalgia"—are inconsistent with a diagnosis that plaintiff was disabled on April 6, 2009. That plaintiff continued to work at Wal-Mart for the next six months further contradicts Dr. Davison's diagnosis.

Plaintiff spends several pages in her brief discussing objective disability testing that occurred *after* April 6, 2009.  However, such evidence is irrelevant to the ALJ's conclusion that Dr. Davison's April 6, 2009 diagnosis was not based on objective evidence—he did not and could not have considered such evidence.  Plaintiff provides no objective evidence of total

disability that was considered or available to Dr. Davison on the date he issued his diagnosis. Substantial evidence supports the ALJ's decision to assign little weight to Dr. Davison's opinion because he based his diagnosis primarily on plaintiff's complaints and his own conclusions and plaintiff's work history contradict his diagnosis.

The Court finds that the ALJ applied the correct analysis when evaluating Dr. Davison's opinion.  He found that Dr. Davison's opinion was not well-supported because plaintiff's work history contradicted it, it was contrary to the medical evidence, and it was given well before the onset of her disability.  As a result, the ALJ did not err by assigning "little weight" to Dr. Davison's April 6, 2009 statement.

### c.  Dr. Kirk Bliss

The ALJ considered the medical opinion of another treating physician, Dr. Bliss, but also gave his opinion "little weight."  (R. 18)  Treatment records from Dr. Bliss begin in April 2009, and it appears that Dr. Bliss saw plaintiff for the last time in May 2010.  (*Id.*)  He continued to prescribe medicine for plaintiff until November 2010.  (*Id.*)  On August 10, 2011, a week after the August 3, 2011 ALJ hearing, plaintiff submitted a statement prepared by plaintiff's lawyer and signed by Dr. Bliss.  In it, Dr. Bliss concluded that plaintiff's "most limiting disorder was bulging disc and bone spurs in the lumbar spine which caused prominent bilateral neural foraminal narrowing and radiculitis."  (R. 444)  Dr. Bliss noted that plaintiff's "complaints of pain and limitation are consistent with the June 23, 2009 MRI findings that disclosed this lumbar spine disorder."  (*Id.*)  According to Dr. Bliss, "it is reasonable that on her 'good days' [plaintiff] could not function in a standing or sitting upright position for more than about 15 minutes at a time nor more than two out of 8 hours during a day."  (*Id.*)  In addition, her lumbar disorder would "markedly limit her ability to bend, stoop, and squat."  (*Id.*)  Furthermore, Dr. Bliss found

it "reasonable" that her disorder "also causes 'bad days' during which [plaintiff] is largely debilitated by pain and would have to be absent from even the least demanding work."  (*Id.*) These bad days "would be a majority of the time."  (*Id.*)

Dr. Bliss also stated that depression and anxiety were significant factors which required plaintiff to require "redirection" at least every half hour because of her difficulty maintaining attention.  (R. 445)  He noted that plaintiff "also has degenerative changes in her cervical spine, gout, peripheral neuropathy, and fibromyalgia" which would "further add to her limitations, including flares and the need for absences."  (*Id.*)  Dr. Bliss concluded by saying that his opinion was based on his "treatment notes" and "specific recollections" and was "consistent with the objective medical evidence."  (R. 446)

The ALJ considered Dr. Bliss' medical opinion, but gave it "little weight" in his analysis. (R. 18)  He provided three reasons for assigning the medical opinion little weight:  (1) the statement lacked credibility because it was prepared by plaintiff's attorney; (2) the statement was not consistent with Dr. Bliss' treatment records; and (3) the statement was not consistent with the treatment records as a whole.  (*Id.*)

The ALJ discounted the credibility of Dr. Bliss' statement noting that "the spontaneity of the actual file opinions and notes are much more persuasive than a statement prepared by the attorney (who has considerable financial incentive in a favorable opinion from the medical source) for the doctor to sign more than a year after he last saw the claimant."  (*Id.*)  Plaintiff cites *Hinton v. Massanari* for the proposition that "in the absence of other evidence to undermine the credibility of a medical report, the purpose for which the report was obtained does not provide a legitimate basis for rejecting it."  13 F. App'x 819, 823 (10th Cir. 2001)  But while it is true that an ALJ may not *reject* a treating source's opinion simply because an attorney

15

prepared it, "[a]n ALJ may certainly question a doctor's credibility when the opinion, as here, was solicited by counsel." *Id.* at 824 (citing *Saelee v. Chater*, 94 F.3d 520, 522-23 (9th Cir. 1996)). In *Saelee*, the Ninth Circuit held that the ALJ's conclusion that a treating physician's report was untrustworthy because "it was obtained solely for the purposes of the administrative hearing, varied from [the doctor's] own treatment notes, and was worded ambiguously in an apparent attempt to assist [the plaintiff] in obtaining social security benefits" was a "permissible credibility determination." 94 F.3d at 522-23. The ALJ properly considered the fact that plaintiff's lawyer prepared Dr. Bliss' statement.

Plaintiff also faults the ALJ for noting that Dr. Bliss signed his medical statement over a year after he had last seen plaintiff. However, plaintiff cites no authority that considering the length of time since a doctor treated the patient was improper; furthermore, it does not appear to be a significant factor in the ALJ's analysis. Thus, the ALJ did not err in discounting the credibility of Dr. Bliss' opinion because it was obtained solely for the purpose of the administrative hearing and was prepared by plaintiff's lawyer.

In addition, the ALJ gave "little weight" to Dr. Bliss' opinion because it was contrary to Dr. Bliss' treatment notes and the records as a whole. Again, there is no dispute that plaintiff suffers from various ailments including back pain and fibromyalgia. However, the ALJ was correct in concluding that no substantial record evidence shows that the severity of plaintiff's ailments rises to a level that she is unable to engage in any substantial gainful activity.

The Court briefly references the treatment notes discussed in the section addressing Dr. Davison's opinion above. Those notes indicated back pain and fibromyalgia, but not at a severe enough level to suggest that plaintiff is completely disabled. After Dr. Davison's April 6, 2009 conclusion that plaintiff was "in pretty good shape," plaintiff returned to Wichita West on June

17, 2009.  Based on an x-ray, Dr. Bliss noted "mild degenerative changes with degenerative disk disease at L5-S1 and disk space narrowing."  (R. 259)  Plaintiff faults the ALJ for not discussing the fact that Dr. Bliss also diagnosed plaintiff with lumbar radiculitis for which he ordered an MRI, arguing that the ALJ "ignored" the MRI evidence.  (Doc. 17 at 8)

   "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."  *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).  Here, while the ALJ did not discuss the fact that Dr. Bliss ordered the MRI on June 17, 2009, he considered the evidence provided by the MRI.  The ALJ discusses the notes of Dr. Sollo who reviewed plaintiff's lumbar MRI.  (R. 15)  He noted that Dr. Sollo's review of the MRI showed some degenerative changes from L3 to S1, with more significant changes between L5-S1.  (*Id.*)  Plaintiff claims that the ALJ ignored the fact that Dr. Sollo noted "some severe neural foraminal narrowing at L5-S1," but the ALJ did note that the most significant changes were at L5-S1.  (R. 15, 254)

   After the MRI ordered by Dr. Bliss, Dr. Davison noted that the MRI "shows that [plaintiff] has diffuse spinal arthritis as well as a bulging disk.  Her pain is in the right leg and at L4-L5 she does have a bulging [disk] that goes over to the right leg."  (R. 260)  However, Dr. Davison wrote, "I do not think she is really eager to do anything else.  Occasionally she will go to a chiropractor once or twice a month and that is usually enough for her so I think at this time information and the opportunity to get occasional treatment is what she really wants."  (*Id.*)  Dr. Davison's statement, post-MRI, is inconsistent with Dr. Bliss' finding that plaintiff would have to be absent from work "a majority of the time."  Were plaintiff in such extreme pain that she was unable to work she likely would have sought more significant help than occasional visits to a chiropractor.

The ALJ noted that plaintiff made a few more visits to West Wichita before stopping in November 2010 because her health insurance changed.  (R. 15-16)  At that time, she switched to Hunter Health Clinic.  The ALJ discussed the Hunter Health Clinic records and found them to be "without evidence of any significant concerns."  (R. 16)  The Hunter Health Clinic records show that plaintiff, over various visits, complained of multiple and differing ailments, but generally reported that her conditions were "stable."  (*Id.*)  Plaintiff argues that because the ALJ did not discuss every conclusion in the Hunter Health Clinic records, the ALJ only considered the evidence favorable to a finding of no disability.  On the contrary, the ALJ found that plaintiff suffered from severe ailments, and notes that plaintiff frequently complained of pain to her doctors at Hunter Health Clinic.  (*Id.*)  The problem for plaintiff is that the Hunter Health records are inconsistent with impairments so limiting that they preclude all substantial gainful activity.

Treatment records at Hunter Health start on April 14, 2010.  (R. 366)  On that date, plaintiff complained of GERD, fibromyalgia, depression, allergies, and asthma, but the notes report that plaintiff was "doing well on all medications."  (*Id.*)  On June 14, 2010, plaintiff reported that she was "doing well.  Just needing med refills."  (R. 316)  She denied musculoskeletal stiffness, weakness, swelling, or pain.  (R. 317)  Plaintiff claims that the ALJ erred because he did not discuss that the treatment records also noted a complaint of "Pain in Joint, Site Unspecified."  (*Id.*)  Again, however, the ALJ found that plaintiff suffered from various "severe" ailments—to show error, there must be evidence that the ALJ ignored parts of the record that support Dr. Bliss' diagnosis.  "Pain in Joint, Site Unspecified" does not suggest work-preclusive pain and detracts from Dr. Bliss' conclusion.

The ALJ considered plaintiff's November 15, 2010 visit to Hunter Health and noted that she again denied musculoskeletal pain, complaining only of arm numbness.  (R. 375)  The ALJ

did not discuss that the treatment notes also show "Pain in Joint, Site Unspecified," limb pain, and lumbago, but, as discussed above, this evidence does not support Dr. Bliss' conclusion.  (R. 376)  The January 11, 2011, treatment records state that plaintiff had received a cortisone shot a few months earlier, resulting in "good pain relief."  (R. 378)  Plaintiff argues that the ALJ erred because he did not point out that plaintiff was receiving another cortisone shot on January 11, which suggests that the cortisone shots did not provide lasting relief.  Even so, that evidence does not detract from the ALJ's conclusion that plaintiff's symptoms, while severe, were "stable." Significantly, during her January 24, 2011 doctor's appointment, plaintiff requested a "handicapped" parking permit, but the treating physician agreed to provide one only on a temporary basis.  (R. 381)  This suggests that the treating physician did not believe plaintiff was permanently disabled.

On February 25, 2011, plaintiff still complained of pain, but stated that her conditions were stable.  (R. 389)  Plaintiff argues, correctly, that "stable" means that a patient's symptoms have not changed significantly.  (Doc. 17 at 14)  Still, because nothing in the treatment notes suggests impairments severe enough to prevent plaintiff from working, the fact that plaintiff's condition was "stable" lends support to the ALJ's RFC finding.  Finally, the plaintiff complains that the ALJ failed to consider plaintiff's June MRI, when evaluating plaintiff's April 26, 2011 doctor's appointment.  As discussed above, the ALJ did discuss the MRI findings, so the Court rejects plaintiff's argument.

The ALJ concluded, "[c]onsidered as a whole, these [Hunter Health] treatment notes simply do not support disabling level limitations."  (R. 16)  Having reviewed the Hunter Health Clinic records, the Court finds that there is substantial evidence to support the ALJ's assessment.

Plaintiff argues that the ALJ erred when he concluded, without citing any authority, that "[t]he medical evidence identifies no clinical signs typically associated with chronic musculoskeletal pain such as muscle atrophy, muscle spasms, neurological deficits, positive straight leg-raising, inflammatory signs, or bowel or bladder dysfunction" (R. 20)  An ALJ is not permitted to make a medical judgment by "supplement[ing] the record with his own medical findings."  *Hatfield v. Apfel*, No. CIV. A. 94-1295, 1998 WL 160995, at *7 (D. Kan. March 3, 1998).  Nevertheless, the Court finds this is harmless error.  Excluding the offending statement and based on the record as a whole, substantial evidence remains to support the ALJ's RFC finding.

In addition to the treatment notes, the ALJ found Dr. Bliss' diagnosis not credible because plaintiff was working at the time of her disability hearing.  Dr. Bliss concluded that plaintiff "could not function in a standing or sitting upright position for more than about 15 minutes at a time nor more than two out of 8 hours during a day." (R. 444)  However, her job as a senior care companion, which started in April 2011, required her to sit and stand.  (R. 50-51) She sometimes worked 40-hour weeks.  (*Id.*)  Thus, while plaintiff suffered from various "severe" ailments, they did not prevent her from working at the time of the hearing, which cuts against Dr. Bliss' diagnosis.

Plaintiff argues that the ALJ did not consider plaintiff's depression in making his determination.  However, the ALJ noted her depression several times and that it appeared to be controlled with medication.  For instance, the ALJ writes of plaintiff's February 25, 2011 Hunter Health Clinic visit that "[t]hese records also note that symptoms of depression were controlled." (R. 16)  The ALJ properly considered plaintiff's depression.

Thus, the ALJ followed the correct analysis in evaluating Dr. Bliss' opinion.  He found that Dr. Bliss' opinion was not well-supported because it was prepared by plaintiff's attorney and was not consistent with Dr. Bliss' treatment records or the records as a whole.  As a result, the ALJ did not err by assigning "little weight" to Dr. Bliss' August 10, 2011 medical opinion.

### 3.  State Agency Physician Opinions

Plaintiff argues that the ALJ erred by giving substantial weight to the opinions of two state agency reviewing physicians who never treated plaintiff.  Evidence from nonexamining sources such as state agency physicians and medical experts is considered opinion evidence.  20 C.F.R. § 416.927(e).  ALJs are not bound by nonexamining source opinions but must consider them, except for opinions about the ultimate issue of disability.  *Id.*  While the opinion of an agency physician who has never seen the claimant is generally entitled to little weight, the ALJ can accept the opinion of state agency physicians over that of treating physicians if the opinions of the state agency physicians are consistent with the evidence in the record.  *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004); *Barnhill v. Astrue*, 794 F. Supp. 2d 503, 516 (D. Del. 2011) (citing *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991)).

The ALJ gave "substantial weight to the medical opinions of the state agency medical consultants as they are consistent with the evidence as a whole."  (R. 20)  Dr. Gerald Siemsen found plaintiff capable of performing less than full range of light work:  carrying 10 pounds frequently and 20 pounds occasionally, sitting about 6 hours in an 8 hour work day, and standing or walking about 6 hours in an 8 hour work day, with only occasional limitations in standing, kneeling, crouching, and crawling.  (*Id.*)  Dr. Sandip Sen found mild limitations in activities of daily living primarily related to pain with no significant limitation in social function and no more than moderate limitations in sustaining concentration and pace.  (*Id.*)

These diagnoses are consistent with the record as a whole.  Plaintiff has consistently complained of pain, but the medical records contain no evidence that her various conditions prevent her from performing any work in the national economy.  Indeed, at the time of her disability hearing, she was working 20-40 hours per week as a senior home health care worker. Plaintiff testified that she was able to care for herself and her home.  (R. 19)  She is able to drive, shop, and handle finances.  (*Id.*)  While she completed a statement in June 2010 that she was unable to do yard work due to her pain, in April 2010 she reported that her interests included outside activities including yard work and going to the zoo.  (R. 196, 305).  She was the primary caregiver for her mother for years before her death in February 2010.  (R. 19)  Because the opinions of the two state agency physicians are consistent with evidence in the records, the ALJ properly considered their opinions.

### 4.  Summary

The Court finds that the ALJ's RFC determination was supported by substantial evidence and was based on correct rules of law.  The ALJ thoroughly examined the record and determined that plaintiff had the ability to perform "somewhat less than a full range of 'light work'" as the term is defined in 20 CFR §§ 404.1567(b) and 416.967(b).  The Court affirms the ALJ's RFC finding.

### B.  Plaintiff Can Perform "Other Work" in the National Economy

Plaintiff also claims, without making any argument in support, that the Social Security Administration "has not met its burden of proof to show Plaintiff could do other work."  (Doc. 17 at 22)

After formulating plaintiff's RFC and finding that she could not perform her past relevant work, the ALJ recognized that the burden shifted to the Commissioner to show that plaintiff

could perform "other work" that existed in significant numbers in the national economy. (R. 21) The ALJ may satisfy this burden with testimony of a vocational expert. 20 C.F.R. §§ 404.1566(e), 416.966(e). To constitute "substantial evidence," the ALJ must present the vocational expert with all of a claimant's physical and mental impairments before the vocational expert determines whether sufficient jobs exist in the national economy. *Hargis v. Sullivan*, 945 F.2d 1482, 1491 (10th Cir. 1991).

Here, the ALJ asked the vocational expert if an individual with the limitations of plaintiff's RFC could perform work which existed in substantial numbers in the national economy. (R. 58-60) The vocational expert responded that such an individual could perform the requirements of other work. (R. 60) For example, he testified that plaintiff could work as a bench assembler, an arcade attendant, a video clerk, an order clerk, a clerical mailer, and a semiconductor assembler. (R. 62-63)

The ALJ properly relied on the vocational expert's testimony that, given plaintiff's RFC, there were sufficient jobs in the national economy that plaintiff could perform. As a result, the Court rejects plaintiff's argument that the ALJ did not meet his burden to show that plaintiff could perform "other work."

## IV. Conclusion

Plaintiff argues that the ALJ's RFC determination was not supported by substantial evidence and was not based on the correct rules of law. After considering the briefs submitted and the administrative record, the Court rejects plaintiff's argument. The ALJ found that plaintiff suffers from severe ailments. However, the evidence supports the ALJ's conclusion that plaintiff has the RFC to perform "somewhat less than light work" and that there are sufficient

jobs that she can perform in the national economy.  As a result, the Court affirms the ALJ's

decision denying plaintiff SSD and SSI benefits.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the Commissioner's

decision denying plaintiff Social Security Disability and Supplemental Security Income benefits

is affirmed.

**IT IS SO ORDERED.**

**Dated this 18th day of September, 2014, at Topeka, Kansas.**


**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**